[No. 4731.]

LAMORA SILVEY AND CHRISTOPHER SILVEY, BY MARY A. SILVEY, THEIR GUARDIAN AD LITEM, AND DAVID E. ALLISON, AND LILLY ALLISON, HIS WIFE, *v.* SUSAN M. HODGDON AND CHARLES H. HODGDON, HER HUSBAND, AND THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA.

ENFORCEMENT OF TRUST BY COURT OF EQUITY.—If a person who desires to procure an insurance on his life for the benefit of his children makes a parol contract with another, by which the former is to pay the premiums and the policy is to be made payable to the latter, who is to hold it in trust for the children, and collect and hold the proceeds in trust for them, a Court of Equity will enforce the trust; and if the trustee is an improper person to receive the money and execute the trust, will remove him and appoint another.

IDEM.—Such trust should be clearly and distinctly proved; but may be proved by parol evidence.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Anthony Silvey was the husband of the plaintiff Mary A. Silvey and the father of the plaintiffs Lamora and Christopher Silvey and Lilly Allison, and of the defendant Susan M. Hodgdon. The plaintiffs Lamora and Christopher were minors. The father informed his daughter—the defendant Susan M.—that he desired to make some provision for his three chil-

dren, Lilly, Lamora, and Christopher; and thereupon she suggested that he had better procure an insurance on his life for their benefit, and proposed that the policy should be made payable to her, and promised, in the event of his death, to collect the amount secured by the policy, and hold the same in trust for the sole use and benefit of said Lilly, Lamora, and Christopher. In consideration of this promise, the father procured a policy of the Pacific Mutual Life Insurance Company, of California, for five thousand dollars, which was made payable to defendant Susan, and paid the premiums on the same. The policy was dated on the 14th day of September, 1869. The father died at Shreveport, Louisiana, on the 16th day of January, 1871. After his death, said Susan repudiated the trust, and claimed the insurance fund as her own, and threatened to collect the same and convert it to her own use. This suit was brought to have the trust enforced. It was alleged that said Susan was not a suitable person to manage the trust. The insurance company did not appear, nor does the record show that it was served with process; but it joined in the appeal. The Court found, as conclusion of law, that the children were in equity entitled to the sum due on the policy, and that the trustee should be removed and another person be appointed in her place, and that the insurance company should pay the money to the person appointed as such trustee. The defendants appealed from an order denying a new trial. The other facts are stated in the dissenting opinion.

*Delos Lake,* for the Appellants, argued that the trust could not be proved by parol, as it was an express trust, and cited Perry on Trusts ed. 1874, sec. 76; and *Dickerson* v. *Dickerson,* 2 Mur. 279; 1 Carolina Law Repository, 262; *Steer* v. *Steer,* 1 J. C. R. 1; *Dean* v. *Dean,* 6 Conn. 285; *Hutchinson* v. *Tindall,* 2 Green Ch. 357; *Starr* v. *Starr,* 1 Hamm. (1 Ohio) 321; *Lloyd* v. *Inglis Excr.* 1 Desau, 333; *Moran* v. *Hayes,* 1 J. C. R. 343; *Philbroke* v. *Delano,* 29 Maine, 410. He also argued that Mrs. Hodgdon was designated in the policy by the term " assured "; and this term " assured " meant, not the person whose life was *assured,* but the person *for whose benefit the*

*insurance was made*, and cited Bliss on Ins. p. 6, sec. 5, p. 500, sec. 320 (ed. 1872); *Hagle* v. *Guardian Life Ins. Co.* 6 Robertson, 567; Same Case, 4 Abb. N. S. 346; and *Wason* v. *Colburne*, 99 Mass. 342.).

*D. T. Sullivan, W. E. Turner,* and *C. T. Botts,* for the Respondents, argued that the policy of insurance was not the foundation but the subject of the suit, and that it was the money which was the subject of the trust, and that the question was whether the legal holder of personal property could be shown by parol to hold it in trust for others, and that the contract upon which the plaintiffs claimed was the verbal contract between Anthony Silvey and the defendant Susan, and cited Adams' Eq. pp. 27*, 28*, 33*, (5th Am. ed.) where are cited various text-books and decisions.; *Hoge* v. *Hoge*, 1 Watts, 213; *Walgram* v. *Tebbs*, 20 Jurist, (N. S.) vol. 2, p. 85; *Jenkins* v. *Eldridge*, 3 Story, 181; *Bottsford* v. *Burr*, 2 John. Ch. p. 174; *Foote* v. *Foote*, 58 Barb. 258; *Ryan* v. *Dox*, 34 N. Y. 307; First Greenl. Ev. secs. 279 and 284; *Lockwood* v. *Canfield*, 20 Cal. 126.)

By the Court, McKINSTRY, J:

Had defendant Susan M. Hodgdon received the proceeds of the policy of insurance, she could have contracted in respect to them.

Nor can it be doubted, that after the policy was issued, and before the death occurred, she could have assigned the policy, voluntarily or for a consideration, to the use of the infants. And any act clearly indicating her intention to transfer her interest in the policy would be sufficient to operate (at least) an equitable assignment, although she had retained possession of the policy, and the insurance company had received no notice of the transfer, until after it was actually made. (Bliss on Life Ins. sec. 330 *et seq.*)

It is probable that the Courts would not recognize the validity of a contract, entered into before the policy was taken out, between the assured and a third person *not having an insurable*

*interest*, to the effect that such person should have the whole benefit of the insurance. It might, perhaps, be held that such a contract was in fraud of the law, and that to recognize it would indirectly give the benefit to one prohibited from becoming a direct party to the policy of insurance. But the infant children had an insurable interest in the life of Anthony Silvey; and we have been referred to no principle of law which will prohibit the enforcement of a contract by the assured with regard to the disposition of the proceeds of the policy, although made before the policy is issued, except, perhaps, in the case suggested—where the other contracting party has no insurable interest in the life insured.

By an English *statute*, a policy was void which was effected by one who had no real interest in it, for the benefit of another person. (14 Geo. III, chap. 48.) Under this statute it was held that where an insurance was effected by the party nominally insured, at the instance and for the benefit of another who was to pay the premiums, and in pursuance of an agreement between them under which he immediately secured, by assignment or bequest, the sole benefit of the policy, the policy was void as not having been issued to the real party in interest. (*Shilling* v. *The Accidental Death Insurance Company*, 27 Law Journal, N. S. Ex. 16 Jurist, vol. 4, p. 1, 244.)

But no State has adopted the provision of the English statute which requires that the name of the person really interested in the policy shall be stated in it. (Bliss on Life Ins. sec. 20.)

The English statute did not extend to Ireland, but there, where one of the conditions of a policy was that the "insurer should have an interest in the life of the assured," it was held that procuring a person to effect an insurance on his life, and then to assign to a third person *who had no interest*, was an evasion of the conditions of the policy. (*Scott* v. *Roose*, Longf. & T. 54; S. C. 3 Ir. Eq. 170.)

The last case may be considered as deciding that where the insurance has been nominally obtained by a person on his own life, (or by an assured on a life in which he has an interest) the policy is *prima facie* valid, but it may be shown, as against a recovery on the policy by the nominal assured, that it was

really obtained for the benefit of a third person, who has no insurable interest. The same rule is, perhaps, applicable in this country, and is here based not only on the letter of the contracts of insurance, but on the principles of public policy which grow out of the very nature of such contracts. (Bliss on Life Ins. sec. 17.) But there is no intimation in the cases that the nominal assured, having an interest, may not recover on a policy, although he may apply for and receive it for the benefit of a third person, who also has an insurable interest in the life insured, except where, as in England, a *statute* declares that a policy not taken out in the name of the person actually interested shall be absolutely void.

It is said, however, that the contract of Anthony Silvey and Susan M. Hodgdon contradicted the written policy of insurance, and that all prior · conversations or stipulations between these two were merged in the written instrument.

It is a rule that the parties to a written contract shall not be permitted to change its terms by proof of conversations occurring previous to the execution of the writing.

But there was no evidence of the existence of a written agreement between Anthony Silvey and Susan M. Hodgdon. He was not a party to the policy of insurance, nor had he any contract, written or otherwise, with the Pacific Mutual Insurance Company. His oral contract with Susan M. was not merged in, nor did it contradict any writing to which they were parties.

It is admitted that a trust concerning personal property may be proven by parol, but it is contended that, owing to the circumstance that the application for insurance was made by defendant Susan M., with the knowledge, consent, and approval of Anthony Silvey, he is estopped from showing that the policy was not—as declared in it—" for the sole and exclusive benefit " of the assured.

But she might have applied for the policy without consulting him, and his assent did not make him a party to the *writing*. Reliance on his oral assent is to give effect, not to the writing, but to the oral assent. If resort is to be had to the proof of statements indicating an oral assent, the whole of the statements

are admissible; the assent cannot be separated from its condi-
tions—the bare assent admitted, and the terms on which it was
given rejected. His assent, of itself, does not affect the con-
struction of the policy at all. Whether he assented or not, he
could not control the disposition of the fund to be derived from
the policy; the question here is, whether *she* contracted or de-
clared that she would hold it in trust for the infants.

It is true that a contract between Anthony and Susan M.,
alone, could not affect the rights of the insurance company.
The contract did not purport to affect the rights of the com-
pany. In this view it may be assumed that the company might
refuse to pay the amount of the policy to any other person than
Susan M. Hodgdon. The contract found by the Court below
to have been made by Anthony Silvey and defendant Susan
M., in no way added to nor varied the tenor or conditions of the
written contract between the insurer and the assured, but simply
imposed on the latter an obligation in respect to the moneys
which should come to her hands when the agreement of insur-
ance should be fully executed.

We can discover no good reason why the parol trust should
not be enforced.

It is suggested a decree directing the insurance company to
pay the amount of the policy, etc., to a trustee for the infants,
is in effect rendering a judgment against the company for mon-
eys which it is bound to pay only to Susan M. Hodgdon, by the
terms of the policy. In the first place the insurance company
is not here to make the objection; and, in the second, the fact
that she has the legal title, and is alone (with her representa-
tives and assigns) authorized to bring the action at law on the
policy, does not deprive a Court of Equity of the jurisdiction to
adjudicate a trust, and to render such adjudication effectual.
Indeed, upon those facts the equitable jurisdiction is in part
based.

Appellant relies very strongly on the authority of *Wason* v.
*Colburn* (99 Mass. 342).

By a statute of Massachusetts, (Gen. Stats. chap. 58, sec. 62)
it was provided: "When a policy is effected by any person on
his own life, or on the life of another, expressed to be for the

benefit of such other, or his representatives, or a third person, the person for whose benefit it was made shall be entitled thereto, against the creditors and representatives of the person effecting the same." In the case cited, the Supreme Court of Massachusetts held that a policy effected by the assured on his own life, and expressed to be payable on his death " to his heirs or representatives," was not expressed to be for the benefit of any " third person," within the meaning of the statute, but was payable to the administrator as assets of the estate of the deceased.

In the agreed statement of counsel in that case was the clause: " It is further agreed, (if the fact is admissible on the question of *the construction of the policy*) that soon after effecting the insurance, E. L. (the assured) declared orally that it was intended for the benefit of his son." The Court, in its opinion, says, in reference to this clause : " Evidence of the oral declarations of the assured, made after he received it, (the policy) are inadmissible to *vary its construction.*" There was no pretense of any latent ambiguity in the policy, and, of course, the Court construed the language employed in the writing, and could not transfer to one of the parties to the written contract the task of saying what it meant. In the same opinion and connection the Court also remarked : " Nor are *mere statements*, that it was intended for the benefit of his son, *sufficient to constitute a trust.*"

We have no doubt that such a trust should be clearly and distinctly proven, and that loose statements, that the policy was " intended for the benefit " of the sole heir of the assured, who might be expected, in the course of nature, to come into the enjoyment of whatever estate the assured might leave at his death, certainly did not authorize the Court to find the trust proved. The very announcement that such mere statements do not establish a trust, implies that a trust *might be established* by sufficient evidence.

We find nothing in the case cited which conflicts with the views hereinbefore expressed.

Order affirmed.

WALLACE, C. J., dissenting:

The policy of insurance issued by the Pacific Mutual Life Insurance Company of California upon the life of Anthony Silvey, ran in terms to the defendant Susan Medora Hodgdon, who was a daughter of the said Anthony, and in whose life she therefore had an interest, which was the lawful subject of insurance. The premium paid upon the issuance of the policy is therein recited to have been paid by the said Susan, who is therein designated as " *the assured under this policy*," and by its terms the insurance thereby effected is declared to be " *for the sole use of said Susan M. Hodgdon*," and payment is to be made to her " for her sole use, if living, or if not living, to her heirs or legatees, in conformity with the statute," etc. It is therefore apparent upon the face of the policy that the defendant Susan M. Hodgdon, and no other person, is the " *assured* " therein, and her legal relation to the policy, and the insurance thereby effected, is substantially the same as though she had purchased an endowment policy upon her own life, and had survived the period of time in such policy limited.

This being the true construction of the policy, and the legal import of its terms, neither the oral declarations of Anthony Silvey, nor of the defendant Susan, made after she received the policy, to the effect that it was intended for the benefit of third persons, are admissible to vary that construction. It is not competent, by mere proof of such declarations, to create a trust in favor of such third persons in the proceeds of the policy. To do so by such means would be in effect to materially change the several clauses of the instrument, and to interpolate therein the name of some person other than the one mentioned therein as the " assured."

The facts of the case do not, in my judgment, distinguish it in principle from that in *Wason* v. *Coburn*, 99 Mass. 312, referred to in the principal opinion. In that case the insurance money had been actually collected by the executor of the assured, who, upon the face of the policy, and irrespective of the parol evidence offered, appeared to be the beneficiary. It does not seem in that case to have been doubted either by Court or coun-

sel that the proceeds of the policy must of necessity go to the person who, upon the true construction of the instrument, appeared to be the beneficiary. Accordingly, there was an attempt upon the part of the plaintiff to show that the assured had himself orally declared that the insurance was intended, not for himself, but for the plaintiff's intestate, and this evidence was offered for the purpose of *affecting the construction of this policy*, but the Supreme Judicial Court held that such evidence was inadmissible for that purpose, and accordingly gave judgment for the defendant.

I, therefore, dissent from the judgment of my associates.

NILES, J., also dissenting:

I dissent upon the grounds stated in the dissenting opinion of the Chief Justice.