### No. 8944.

### FEE v. WELLS.

1. EVIDENCE—*Parol Inadmissible.* Declarations of the insured in a life policy are not admissible to vary the terms of such policy as to the beneficiary, or create a trust as to the proceeds in favor of a third person.
2. —— *Admissions.* Statements of the beneficiary in a life policy that she intends to apply the proceeds to the benefit of another are not sufficient to establish a trust in such proceeds.
3. LIFE POLICY—*Trust in Proceeds.* Conversations of the beneficiary in a life policy with a stranger, alleged to have occurred long before the trial, and the accuracy of which depends on the recollection of the witness, are not sufficient to establish a trust in the proceeds of such policy; but may be considered in connection with other evidence tending to show a trust previously created by the insured.

The proceeds of the policy are a property right in the beneficiary therein, and a trust in such proceeds in favor of another must be established beyond a reasonable doubt.

*Error to Denver District Court, Hon. H. S. Class, Judge.*

Messrs. DANA & BLOUNT, for plaintiff in error.

Messrs. MELVILLE & MELVILLE, for defendant in error.

Mr. Justice Garrigues delivered the opinion of the court.

PLAINTIFF and defendant are daughters of Mrs. Wells, deceased, and the action was brought by Miss Wells, as plaintiff, against her sister, Mrs. Fee, as defendant, to impress a trust in favor of plaintiff, who was an invalid, upon the proceeds of a life insurance policy, paid defendant, upon the life of their mother, who died July 23, 1914. For ten years prior thereto Mrs. Wells carried a policy in the Prudential Life Insurance Company of America, insuring her life in the sum of $1,000. Her estate was the original beneficiary. In 1909 her son Fred was named beneficiary, and in August, 1912, about two years prior to their mother's death, Mrs. Fee was named beneficiary, and the proceeds were paid to her August 5, 1914.

It is alleged in the complaint that, since January 1, 1914, the insured desired the proceeds to go to plaintiff instead of the beneficiary; that May 15, 1914, in accordance with this desire, the insured and the beneficiary (Mrs. Fee) orally agreed that, upon the former's death, and payment of the insurance, defendant would receive the proceeds in trust for the use and benefit of plaintiff; that defendant accepted the trust, and the insured consented to defendant's being retained beneficiary on account of such agreement; that defendant took advantage of her position as trustee, and after the proceeds were paid, failed and refused to carry out the trust agreement.

November 24, 1915, defendant answered, admitting she was the beneficiary, and that the proceeds were paid to her. She then alleged that, about two years prior to her mother's death, the insured, of her own free will and act, requested the insurance company to name defendant beneficiary; that the change was made by the company, and the policy delivered to her by the insured with the intention that it should become her absolute property, and denied any subsequent trust agreement covering the proceeds.

July 24, 1916, the jury returned a verdict in damages for plaintiff, upon which the court pronounced judgment.

One Mrs. Hubbel, a witness for plaintiff, testified that in June, 1914, she had a conversation with defendant. Witness said: "Mrs. Fee remarked to me, it was a good thing her mother had left this money in trust for Gertrude, because if she had not, somebody would have gotten it away from her. I says: 'You certainly will see that Gertrude gets every cent of it.' She says: 'Absolutely every cent. Mother knew what she was doing.' I says: 'You will see that she is taken care of?' She says: 'Mother knows I will look after Gertrude.'"

One Mrs. Crawford, another witness for plaintiff, testified that she had a conversation with defendant in December or the latter part of November, 1913, regarding the insurance policy. Witness testified: "She told me that her mother had made this policy to her to pay the bills after she was gone, and to take care of Gertrude. She said her mother had left the policy in her name for the purpose of having it go to Gertrude."

Another witness by the name of Mrs. Griffith testified for plaintiff that in June, 1914, she had a conversation with defendant. Witness said: "She said she had convinced her mother that if she changed the policy to any one else, she could not be sure that Gertrude would get the money, but if she left it in her name, as it was at that time, she would always see to Gertrude, and carry out her wishes. She said she had just told her mother that."

This is all the evidence there was to establish a trust agreement.

Defendant, as a witness in her own behalf, denied that when she was made beneficiary in August, 1912, any trust whatever was created, or that any trust was thereafter created or agreed upon, and denied the alleged conversations testified to by the three witnesses.

1. This is an attempt, by oral evidence, to fasten an express trust, for the use of one other than the beneficiary, upon the proceeds of a life insurance policy. It is an equitable action triable to the court, but it does not seem from

the meager record that the case was tried in accordance with usual equity practice, but was submitted to a jury which returned a verdict in damages for plaintiff, upon which the court pronounced judgment.

There is no complaint about the procedure, however, and we will review the case as presented.

2.   There is no claim or evidence that the beneficiary declared a trust and constituted herself trustee.   The complaint alleges the insured created the trust, to which Mrs. Fee consented, and agreed to act as trustee.   There is no claim or evidence that the trust was created before or at the time Mrs. Fee was named beneficiary in August, 1912, or that she was named beneficiary upon any trust agreement or condition whatever, or upon any terms to pay the proceeds to any one else.   In other words, if a trust was created it was by the insured in 1914, some two years after Mrs. Fee was named beneficiary.   So the controlling question is whether, after the beneficiary was named, the insured created a trust in the proceeds in which the beneficiary concurred and agreed to act as trustee.

3.   Defendant claims that an oral express trust could not be created in the proceeds.   We will assume, however, for the purposes of the case, but not decide, that with the consent of the beneficiary, who agrees to act as trustee, the insured could create an oral express trust, without change of beneficiary, after issuing and delivering the policy to the beneficiary.

4.   If a trust was established, it was an oral express trust, created by the insured as distinguished from implied, resulting or presumptive trusts.   But there is no evidence that the insured created a trust.   By this we mean there is no testimony regarding a trust created by the insured except reported conversations with the beneficiary, out of court, by three witnesses who were strangers to the transaction.   Of course, such evidence is hearsay, and ordinarily inadmissible, but it was admitted, under an exception to the rule, upon the ground of declarations against

interest. There is no other proof of an agreement in the first place between the insured and the beneficiary to create a trust. No witness testified to any conversation or agreement between the insured and the beneficiary, nor to any declaration or statement of the insured. Plaintiff, though a witness in her own behalf, did not claim that she had been informed by either of a trust agreement, though she frequently saw her sister, and was with her mother almost constantly.

5. We said there was no evidence of any declaration or statement by the insured. The witness, Hubbel, was asked to repeat a conversation she had with the insured in June, 1914. The question was general and not confined to the issue. It was objected to and the objection sustained, to which cross-errors are assigned. Waiving any irregularity in the form of the question, the objection was properly sustained. Evidence of the insured's oral declarations made to strangers in June, 1914, were inadmissible to vary the terms of the policy. The beneficiary was named in August, 1912, and the policy delivered to her then, and declarations of the insured to strangers, if admissible to vary its construction, should be at a time prior thereto. That is what is meant when we say there is no evidence of any declarations of the insured that she created a trust.

The creation of a trust in the proceeds by the insured, without change of beneficiary, to be binding upon the beneficiary, must be before or cotemporaneous with issuing the policy. After Mrs. Fee had been named beneficiary and the policy delivered to her, it was too late to fasten a trust upon the proceeds by any declaration of the insured. Oral declarations of the insured to strangers after Mrs. Fee was named beneficiary, and the policy delivered to her, will not be received for the purpose of creating a trust in the proceeds. The presumption arising from naming Mrs. Fee beneficiary could not be overcome by the oral declarations of the insured to strangers thereafter. *Wason, Admr., v.*

*Colburn, Admr.,* 99 Mass. 342-344; *Reed v. Liphart,* 177 Ill. App. 645.

6. The witness Crawford's evidence that defendant told her in November, 1913, that her mother had made the policy to her to pay the bills after she was gone, and take care of Gertrude, is not an admission of a trust. Where there is no proof whatever of the creation of a previous trust, statements of the beneficiary that she intended to use the proceeds for a certain purpose are not sufficient to prove a trust. *Wason, Admr., v. Colburn, Admr.,* 99 Mass. 342; *Reed v. Liphart,* 177 Ill. App. 645.

But, aside from this, her evidence must be disregarded for other reasons. If it tends to establish anything regarding a trust, it is that a trust agreement was entered into in August, 1912, at the time Fee was named beneficiary. No such an agreement was pleaded or claimed, and in the next place it is absurd on its face to make such a claim, because if the insured, when she named Mrs. Fee beneficiary in August, 1912, intended to make plaintiff beneficiary, she would have named her beneficiary, and not the defendant.

7. It is claimed in argument that plaintiff proved the creation of a trust by the insured, to which the beneficiary consented, and agreed to act as trustee, or proved that a trust agreement was entered into between the insured and the beneficiary. Reported conversations between the beneficiary and strangers to the transaction, long before the trial, are the only evidence tending to prove the existence of such a trust.

When the proof offered to sustain an oral express trust in the proceeds of a life insurance policy, without change of beneficiary, consists in nothing but reported conversations by the beneficiary with strangers long before the trial (which are denied), the accuracy of which depend entirely upon the uncertain memory or recollection of witnesses as to the exact language used in conversations, such evidence alone is insufficient. The claim should be based upon some evidence in the first place that a trust was created. The

hearsay evidence of these witnesses, called declarations against interest, is insufficient alone to prove that a trust had been previously created by the insured. Such statements, alone, can not be relied upon as creating a trust in the first place, but may be considered in connection with other evidence tending to establish the fact that the insured had previously created a trust. *Frazee v. Phoenix Nat. Bank,* 161 Ky. 175-182, 183, 170 S. W. 532.

In civil cases one can not be held liable upon a claim based solely upon hearsay conversations against interest with strangers, without some proof to establish that such a claim previously existed, of which the declarations are corroborative, any more than in criminal law one could be convicted of murder upon the declaration that he had murdered a person, without some proof in the first place that the person had been murdered.

8.  Proceeds of a life insurance policy are a property right, and before the beneficiary can be divested of the title, use and enjoyment thereof by mere reported statements made out of court to strangers, upon the ground that they are statements against interest, the evidence will be received with great caution, and the proof must be beyond a reasonable doubt. The presumption arising from making Mrs. Fee beneficiary must prevail until the contrary is established beyond a reasonable doubt. *Skeen et al. v. Marriott,* 22 Utah 73, 61 Pac. 296; *Ferguson v. Robinson,* 258 Mo. 113-133, 167 S. W. 447.

Viewed in this light, the evidence, consisting merely in the repetition of alleged oral statements or conversations with the beneficiary, is not of that clear and convincing character required in such cases. *Ferguson v. Robinson,* 258 Mo. 113-133, 137, 167 S. W. 447.

Evidence to establish an oral express trust for the use of one, other than the beneficiary in the proceeds of a life insurance policy, without change of beneficiary, should be equally as strong as parol evidence to establish a resulting trust in real property, regarding which, see *Freeman v.*

*Peterson,* 45 Colo. 102, 100 Pac. 600, and cases cited. The proof must be beyond a reasonable doubt, and the language used must be clear and explicit as to the declaration or creation of the trust. In the instant case the evidence of the two witnesses is not as a matter of law so clear and convincing as to satisfy the mind beyond a reasonable doubt that the insured created a trust in the proceeds of the policy.

Plaintiff was an invalid, and the case presents some hard features, but because of this we can not establish a bad precedent which might in the future open the door to fraud to such an extent as would be liable to endanger the title of beneficiaries in life insurance policies.

The judgment of the District Court is reversed and the cause remanded.

Reversed and remanded.

Chief Justice Hill and Mr. Justice Scott concur.